2017 CO 5

**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Robert Clyde CROUSE, Respondent.**

**Supreme Court Case No. 14SC109**

Supreme Court of Colorado.

January 23, 2017

Attorneys for Petitioner: Daniel H. May, District Attorney, Margaret Vellar, Chief Deputy District Attorney, Doyle Baker, Senior Deputy District Attorney, Colorado Springs, Colorado

Attorney for Respondent: Charles T. Houghton, P.C., Charles T. Houghton, Colorado Springs, Colorado

Attorneys for Amicus Curiae The City of Colorado Springs: Wynetta P. Massey, City Attorney, W. Erik Lamphere, Senior Attorney, Colorado Springs, Colorado

JUSTICE EID delivered the Opinion of the Court.

¶1 The state's medical marijuana amendment, article XVIII, section 14(2)(e) of the Colorado Constitution, requires law enforcement officers to return medical marijuana seized from an individual later acquitted of a state drug charge. The federal Controlled Substances Act ("CSA") prohibits the distribution of marijuana, with limited exceptions. 21 U.S.C. §§ 801–971 (2012). The question in this case is whether the return provision of section 14(2)(e) is preempted by the federal CSA. In a split decision, the court of appeals held that the return provision was not preempted by the CSA on the ground that § 885(d) of the CSA exempts those officers who are "lawfully engaged" in the enforcement of laws relating to controlled substances. According to the appellate court, officers returning marijuana pursuant to section 14(2)(e) are acting "lawfully" and the exemption thus resolves any conflict between the CSA and the return provision. People v. Crouse, 2013 COA 174, ¶¶ 32–33, —— P.3d ——.

¶2 We granted certiorari and now reverse. The CSA does not preempt state law on the same subject matter "unless there is a positive conflict between [a] provision of [the CSA] and that State law so that the two cannot consistently stand together." 21 U.S.C. § 903 (2012). The return provision requires law enforcement officers to return, or distribute, marijuana. Distribution of marijuana, however, remains unlawful under federal law. Thus, compliance with the return provision necessarily requires law enforcement officers to violate federal law. This constitutes a "positive conflict" between the return provision and the CSA's distribution prohibition such that "the two cannot consistently stand together."

¶3 Moreover, the exemption relied upon by the court of appeals does not resolve this conflict. Section 885(d) of the CSA immunizes only those officers who are "lawfully engaged in the enforcement of any law ... relating to controlled substances." 21 U.S.C. § 885(d) (2012) (emphasis added). This court has held that an act is "lawful" only if it complies with both state and federal law. Coats v. Dish Network, LLC, 2015 CO 44, ¶ 4, 350 P.3d 849, 851. The officers here could not be "lawfully engaged" in law enforcement activities given that their conduct would violate federal law. We thus conclude that, because section 14(2)(e) "positive[ly] conflicts" with the CSA, and because § 885(d) does not protect officers acting unlawfully under federal law, the return provision is preempted and rendered void.

I.

¶4 On May 5, 2011, the Colorado Springs Police Department arrested Robert Crouse for cultivating and possessing marijuana with intent to manufacture in violation of state law. The police seized drug paraphernalia, fifty-five marijuana plants, and approximately 2.9 kilograms of marijuana product from Crouse's home. He was charged with one felony count of cultivation of more than thirty marijuana plants and one felony count of possession of between five and one hundred pounds of marijuana with intent to distribute. At trial, Crouse asserted that he was a registered medical marijuana patient, and that state law authorized his cultivation and possession of medical marijuana. The jury acquitted him of both charges.

¶5 After trial, Crouse requested that the district court order the police to return the seized marijuana plants and marijuana pursuant to article XVIII, section 14(2)(e) of the Colorado Constitution. Under this provision, "marijuana and paraphernalia seized by state or local law enforcement officials from a patient ... in connection with the claimed medical use of marijuana shall be returned immediately upon ... the dismissal of charges, or acquittal." Colo. Const. art. XVIII, § 14(2)(e). The People opposed the motion, arguing that the return provision of section 14(2)(e) conflicts with and is therefore preempted by the federal Controlled Substances Act. The People argued that the return of marijuana and related property would require them to "distribute" marijuana, in violation of the CSA. The district court rejected the People's argument and ordered the return of the seized property.

¶6 The People appealed, arguing that the return provision of section 14(2)(e) conflicted with the CSA. In a split opinion, the court of appeals affirmed the district court's decision, holding that the return of the marijuana would not violate the CSA due to the statute's express immunity for law enforcement officers "lawfully engaged in the enforcement of any law ... relating to controlled substances." 21 U.S.C. § 885(d). Because law enforcement officers would be enforcing section 14(2)(e), the court of appeals reasoned, the officers would be acting lawfully under § 885(d), and therefore no conflict exists. Crouse, ¶¶ 32–33.

¶7 In dissent, Judge Bernard would have held that because the return provision "requires police officers to violate federal law by engaging in affirmative conduct that the CSA forbids," it "creates an obstacle to achieving the purposes and the objectives of the CSA" and is therefore preempted. Id. at ¶ 105 (Bernard, J., dissenting). Immunity under § 885(d) of the CSA, he continued, was not applicable because the officers could not be "lawfully engaged" in law enforcement activities that violated federal law. Id. at ¶ 106.

¶8 We granted review of the court of appeals' opinion [1] and now reverse. Compliance with the return provision necessarily requires law enforcement officers to violate federal law. We therefore conclude that the return provision of 14(2)(e) "positive[ly] conflicts" with the CSA such that "the two cannot consistently stand together." Moreover, the exemption relied upon by the court of appeals does not resolve this conflict. Section 885(d) immunizes only those officers who are "lawfully engaged in the enforcement of any law ... relating to controlled substances." 21 U.S.C. § 885(d) (emphasis added). This court has held that an act is "lawful" only if it complies with both state and federal law. Coats, ¶ 4, 350 P.3d at 851. Here, the officers could not be "lawfully engaged" in law enforcement activities given that such conduct would violate federal law. We therefore hold that, because section 14(2)(e) "positive[ly] conflicts" with the CSA, and because § 885(d) does not protect officers acting unlawfully under federal law, the return provision is preempted and rendered void.

## II.

¶9 We review de novo the question of whether the return provision of article XVIII, section 14(2)(e) of the Colorado Constitution is preempted by the federal Controlled Substances Act.

¶10 In 2000, the Colorado Constitution was amended to allow persons "suffering from debilitating medical conditions" to use "medical marijuana." Colo. Const. art. XVIII, § 14. Here we consider only section 14(2)(e) of article XVIII. Section 14(2)(e) provides that if marijuana is seized pursuant to an arrest, "such property shall be returned immediately upon an acquittal." Colo. Const. art XVIII, § 14(2)(e).

¶11 Conversely, the CSA prohibits the distribution and possession of marijuana for nearly all uses. Under federal law, marijuana is classified as a Schedule I controlled sub-

---

1. We granted certiorari to review whether, in a matter of first impression, the court of appeals erred in concluding that the federal Controlled Substances Act does not preempt article XVIII, section 14(2)(e) of the Colorado Constitution, where the state directive requires law enforcement officers to distribute marijuana to medical marijuana patients in violation of the CSA's prohibition of such acts.

stance, meaning that it has no acceptable medical use and cannot be legally prescribed. 21 U.S.C. § 812(c)[ (Sched. I) ](c)(10) (2012); see also 21 U.S.C. § 812(b)(1)(A)–(C) (2012). There is no exception for marijuana use for medical purposes, nor is there an exception for use in compliance with state law. See Gonzales v. Raich, 545 U.S. 1, 14, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). The CSA states that "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1) (2012).

¶12 However, § 885(d) provides an exemption under the CSA for law enforcement officers in certain situations. Section 885(d) states that "no civil or criminal liability shall be imposed by virtue of this subchapter ... upon any duly authorized officer of any State, territory, political subdivision thereof, the District of Columbia, or any possession of the United States, who shall be lawfully engaged in the enforcement of any law or municipal ordinance relating to controlled substances." 21 U.S.C. § 885(d).

¶13 Under the Supremacy Clause of the United States Constitution, the "Constitution, and the laws of the United States ... shall be the supreme law of the land ... anything in the constitution or laws of any state to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. "Under this principle, Congress has the power to preempt state law." Arizona v. United States, 567 U.S. 387, ——, 132 S.Ct. 2492, 2500, 183 L.Ed.2d 351 (2012). The CSA includes its own preemption language. Section 903 of the CSA states that the CSA will not preempt state law on the same subject matter "unless there is a positive conflict between [a] provision of [the CSA] and that State law so that the two cannot consistently stand together." 21 U.S.C. § 903. We thus must determine whether a "positive conflict" exists between the CSA and the return provision in section 14(2)(e) such that "the two cannot consistently stand together."

¶14 Section 14(2)(e) requires law enforcement officers to return seized marijuana and marijuana products to medical marijuana patients after an acquittal. Colo. Const. art. XVIII, § 14(2)(e). The CSA, however, prohibits the distribution of marijuana without regard to whether state law permits its use for medical purposes. 21 U.S.C. § 841. The CSA defines "distribute" to mean "to deliver a controlled substance or a listed chemical." 21 U.S.C. § 802(11) (2012). The CSA further defines "deliver" to mean "the actual, constructive, or attempted transfer of a controlled substance." 21 U.S.C. § 802(8) (2012). An officer returning marijuana to an acquitted medical marijuana patient will be delivering and transferring a controlled substance. Therefore, based on the CSA definition, when law enforcement officers return marijuana in compliance with section 14(2)(e), they distribute marijuana in violation of the CSA. Because compliance with one law necessarily requires noncompliance with the other, there is a "positive conflict" between section 14(2)(e) and the CSA such that the two cannot consistently stand together.

¶15 We also must consider whether § 885(d) resolves this conflict. The § 885(d) exemption immunizes only those officers who are "lawfully" engaged in the enforcement of a law relating to controlled substances. 21 U.S.C. § 885(d). The court of appeals suggested that because the return provision requires law enforcement officers to return marijuana, their actions in compliance with that law are "lawful." We disagree.

¶16 In construing undefined statutory terms we look to the language of the statute itself "with a view toward giving the statutory language its commonly accepted and understood meaning." People v. Schuett, 833 P.2d 44, 47 (Colo. 1992).

¶17 The term "lawful" as it relates to conduct permitted by state law but prohibited under federal law has already been considered by this court in Coats v. Dish Network, LLC, 2015 CO 44, ¶ 4, 350 P.3d 849, 852. In Coats, we considered how Colorado's medical marijuana law interacted with section 24–34–402.5, C.R.S. (2014), which prohibits an employer from terminating an employee for his or her "lawful" outside of work activities. Coats, ¶ 15, 350 P.3d at 852. In that case, the plaintiff was terminated when

he tested positive for marijuana in violation of his employer's drug use policy. The plaintiff argued that the termination was improper because his marijuana use was "lawful" under Colorado medical marijuana laws. Id. at ¶ 7, 350 P.3d at 851. We disagreed, concluding that "the commonly accepted meaning of the term 'lawful' is that which is permitted by law or, conversely, that which is not contrary to, or forbidden by law." Id. at ¶ 17, 350 P.3d at 852. Applying this definition, we held that "an activity such as medical marijuana use that is unlawful under federal law is not a 'lawful' activity under section 24–34–402.5." Id. at ¶ 13, 350 P.3d at 851.

▉ ¶18 The term "lawful" is not defined in the CSA. However, we look to the plain meaning of a term in interpreting a federal statute just as we would look at the plain meaning of a term in interpreting a state statute. See, e.g., FDIC v. Meyer, 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ("In the absence of . . . a definition [of a term in a federal statute], we construe a statutory term in accordance with its ordinary or natural meaning."). As we stated in Coats, the plain meaning of "lawful" is "that which is permitted by law or, conversely, that which is not contrary to, or forbidden by law." Coats, ¶ 17, 350 P.3d at 852. Consistent with our holding in Coats, then, we again find that conduct is "lawful" only if it complies with both federal and state law. Because compliance with the return provision necessarily requires law enforcement officers to violate federal law, officers complying with that provision cannot be said to be acting "lawfully" and thus are not protected by § 885(d)'s exemption.[2]

¶19 We therefore hold that the return provision of section 14(2)(e) is in positive conflict with and thus preempted by the federal Controlled Substances Act. The exemption relied upon by the court of appeals protects only those officers acting lawfully under both state and federal law and is thus inapplicable here.[3]

## III.

¶20 For the reasons stated above, we reverse the decision of the court of appeals.

JUSTICE GABRIEL dissents, and CHIEF JUSTICE RICE and JUSTICE HOOD join in the dissent.

JUSTICE GABRIEL, dissenting.

¶21 The majority concludes that the federal Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801–904 (2012), expressly preempts section 14(2)(e) of article XVIII of the Colorado Constitution, which requires the immediate return of marijuana seized by state or local law enforcement officials from a patient upon the determination that the patient was entitled to use the marijuana for medical purposes in accordance with the Colorado Constitution, as evidenced by, among other things, a decision not to prosecute, the dismissal of charges, or an acquittal.

¶22 Because I believe that the plain language of § 885(d) of the CSA, 21 U.S.C. § 885(d), immunizes federal and state officers from civil and criminal liability in the circumstances at issue here, I perceive no conflict between the CSA and section 14(2)(e) of article XVIII of the Colorado Constitution, nor do I believe that it is impossible to comply with both the CSA and the Colorado Constitution, as the majority implicitly and the People expressly contend.

¶23 Accordingly, I do not agree that the CSA preempts section 14(2)(e) of article XVIII of the Colorado Constitution, and therefore, I respectfully dissent.

## I. Analysis

¶24 As an initial matter, I note that the majority characterizes the issue presented as

---

**2.** The court of appeals erred in its reliance on case law permitting sting operations under the CSA for its conclusion that officers acting pursuant to section 14(2)(e) would be protected by § 885(d)'s exemption, Crouse, ¶ 37, 388 P.3d at 45, because such sting operations are "lawful" enforcement and consistent with federal law.

See, e.g., United States v. Cortes-Caban, 691 F.3d 1, 20–21 (1st Cir. 2012).

**3.** Because we find that section 14(2)(e) is preempted under the terms of the CSA preemption provision, we need not consider whether other preemption principles would apply as well.

one of express preemption. See maj. op. ¶ 20 n.2. The majority bases this view on its understanding of § 903 of the CSA, which provides, in pertinent part:

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates ... to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903 (2012).

¶25 It is not clear to me, however, that this provision is, in fact, an express preemption provision. The statute's subject is field preemption, and the statute's purpose appears to be to confirm that Congress does not intend to preempt the field of drug enforcement, subject to an exception for "positive conflicts."

¶26 Accordingly, I agree with the parties that the issue before us is more properly characterized as one of conflict preemption, under which state laws are preempted either when (1) simultaneous compliance with federal and state law is impossible or (2) the challenged state law stands as an obstacle to the accomplishment and execution of Congress's purposes and objectives. See Arizona v. United States, 567 U.S. 387, 132 S.Ct. 2492, 2501, 183 L.Ed.2d 351 (2012). And to the extent that § 903 of the CSA defines the term "positive conflict" to refer to the situation in which a federal and state law "cannot consistently stand together," I agree with the People that this language appears to subsume both impossibility and obstacle preemption. Thus, the distinction that the majority appears to be trying to draw between express and implied preemption here, see maj. op. ¶ 20 n.2, seems to be one without a difference.

¶27 To determine whether the CSA preempts section 14(2)(e) of article XVIII of the Colorado Constitution under the foregoing principles, we must first determine what the CSA provides.

¶28 Our primary purpose in statutory construction is to ascertain and give effect to the legislature's intent. Doubleday v. People, 2016 CO 3, ¶ 19, 364 P.3d 193, 196. We first look to the statutory language, giving words and phrases their plain and ordinary meanings. Id. We read the words and phrases of the statute in context, and we construe them according to the rules of grammar and common usage. Id.

¶29 In addition, we must interpret a statute so as to effectuate the purpose of the legislative scheme. Id. at ¶ 20, 364 P.3d at 196. In doing so, we read the scheme as a whole, and we give consistent, harmonious, and sensible effect to all of its parts. Id. We also must avoid constructions that would render any statutory word or phrase superfluous or that would lead to illogical or absurd results. Id. If the statute is unambiguous, then we need not conduct any further statutory analysis. Id.

¶30 Here, I believe that § 885(d) of the CSA is unambiguous. That section provides:

> Except as provided in sections 2234 and 2235 of Title 18, no civil or criminal liability shall be imposed by virtue of this subchapter upon any duly authorized Federal officer lawfully engaged in the enforcement of this subchapter, or upon any duly authorized officer of any State, territory, political subdivision thereof, the District of Columbia, or any possession of the United States, who shall be lawfully engaged in the enforcement of any law or municipal ordinance relating to controlled substances.

21 U.S.C. § 885(d) (emphasis added).

¶31 "Lawfully engaged" plainly means taking part in, pursuant to and within the scope of one's legitimate authority. See Engage, Webster's Third New International Dictionary (2002) (defining "engage" as, among other things, "to employ or involve oneself" or "to take part: PARTICIPATE"). Thus, a police officer who sells drugs to a target as part of an undercover sting is lawfully engaged in performing his or her duties. A police officer who sells drugs while off duty to supplement his or her income is not lawfully engaged in performing his or her duties. See United States v. Wright, No. 06–150–JVP–CN, 2008 WL 4298570, at *3 (M.D. La.

Sept. 16, 2008) ("[A]n officer cannot be lawfully engaged in law enforcement if he violates federal law in the course of committing an act outside the scope of his authority."), aff'd, 634 F.3d 770 (5th Cir. 2011); S.E. v. State, 744 N.E.2d 536, 542 (Ind. Ct. App. 2001) ("Because the deputies were acting beyond the scope of their duties, they were not lawfully engaged in the execution of their duties when they helped [the juvenile defendant's stepmother] gain access to [the defendant's] house. . . .").

¶32 "Enforcing," in turn, means "giving force to." See Enforce, Webster's Third New International Dictionary (defining "enforce" as, among other things, "to give force to"); see also United States v. Rosenthal, 454 F.3d 943, 948 (9th Cir. 2006) (noting that in returning seized marijuana to an individual pursuant to a state law mandating the return of such marijuana, the officers were "enforcing" that state law).

¶33 And "any law or municipal ordinance relating to controlled substances" assuredly includes section 14(2)(e) of article XVIII of the Colorado Constitution.

¶34 Applying these definitions here, I believe that in returning Crouse's medical marijuana pursuant to section 14(2)(e) of article XVIII of the Colorado Constitution, the state officers would be acting within the scope of their legitimate authority (indeed, pursuant to a court order) and would unquestionably be giving force to section 14(2)(e). Accordingly, in my view, in carrying out the district court's order, the officers would be lawfully engaged in enforcing a law relating to controlled substances pursuant to § 885(d) of the CSA.

¶35 For these reasons, I agree with the division's conclusion that § 885(d) of the CSA would immunize the officers' conduct. See Crouse, ¶¶ 32–38; see also State v. Okun, 231 Ariz. 462, 296 P.3d 998, 1001–02 (App. 2013) (concluding that 21 U.S.C. § 885(d) immunizes law enforcement officers from any would-be federal prosecution for complying

with a court order to return the defendant's marijuana to her); City of Garden Grove v. Superior Court, 157 Cal.App.4th 355, 68 Cal. Rptr.3d 656, 681 (2007) (same); State v. Kama, 178 Or.App. 561, 39 P.3d 866, 868 (2002) (same).

¶36 For two reasons, I am not persuaded otherwise by the majority's determination that because section 14(2)(e) of article XVIII of the Colorado Constitution is unlawful under federal law, law enforcement officers complying with that provision cannot be said to be acting lawfully. See maj. op. ¶¶ 16–19.

¶37 First, in making this determination, the majority simply assumes its conclusion, namely, that section 14(2)(e) is preempted. This analysis strikes me as backwards. Specifically, in my view, we must first determine what "lawfully engaged" means because, as I explain more fully below, the definition of that phrase necessarily informs the preemption analysis.

¶38 Second, the majority's analysis leads to absurd results. The majority defines "lawful" with reference to the CSA's prohibition on distribution of controlled substances and states that when law enforcement officers return marijuana in compliance with section 14(2)(e) of article XVIII of the Colorado Constitution, they are distributing marijuana in violation of the CSA. Maj. op. ¶ 15. Under this same reasoning, however, when a law enforcement officer provides marijuana to a target in a sting operation, the officer is also distributing marijuana in violation of the CSA, clearly an absurd result.[1]

¶39 Perhaps having anticipated the flaws in the analysis that the majority ultimately adopts, the People advance a somewhat different argument, namely, that "lawfully engaged" requires the officers to carry out the purposes of the CSA. For several reasons, however, this argument, too, is unpersuasive.

¶40 First, for the reasons set forth above, the plain meaning of the term "lawfully engaged" does not support this interpretation.

---

1. Nor could the majority save its flawed analysis were it to define "lawfully engaged" as (1) "compliant with federal law" when discussing the return provision but (2) "operating to advance proper law enforcement purposes" when considering officers involved in sting operations. The phrase must be defined consistently for all purposes, and my definition, which reflects the phrase's plain and ordinary meaning, does so.

Nor does the plain language of § 885(d), which makes no reference to any purpose of the CSA.

¶41 Second, the People's interpretation defines the CSA's purpose by referring to the CSA provisions precluding the distribution of controlled substances. In doing so, however, the People overlook the fact that § 885(d), which allows the "distribution" of controlled substances in certain circumstances, is also part of the CSA and thus must be considered in determining the CSA's purposes. In my view, doing so reveals not only an intention to prohibit the distribution of controlled substances but also an intention to allow officers to act to enforce both the CSA and, as pertinent here, any law relating to controlled substances. See 21 U.S.C. § 885(d).

¶42 I likewise am unpersuaded by the People's argument that "enforcement" within the meaning of § 885(d) means compelling someone to comply with the law. Although in certain circumstances, "enforcement" can involve compulsion, I do not believe that it must do so or that "compulsion" captures the plain and ordinary meaning of the term "enforcement."

¶43 Having thus concluded that § 885(d) would immunize state officers who are ordered to return Crouse's medical marijuana to him pursuant to the Colorado Constitution, the question remains whether, in light of that conclusion, the CSA preempts section 14(2)(e) of article XVIII of the Colorado Constitution. Unlike the majority, I would conclude that it does not.

¶44 By immunizing state officers from criminal and civil liability in the circumstances at issue here, § 885(d) of the CSA effectively sanctions the return of medical marijuana pursuant to state law. Accordingly, the CSA and section 14(2)(e) of article XVIII of the Colorado Constitution can consistently stand together, and the simultaneous compliance with both is not at all impossible.

¶45 For the same reason, I fail to see how the return of Crouse's medical marijuana pursuant to both the Colorado Constitution and an enforceable state court order would in any way pose an obstacle to the accomplishment and execution of the purposes and objectives of the CSA. As noted above, the CSA effectively allows the return of Crouse's medical marijuana through its grant of immunity to state officers. Accordingly, returning such marijuana is consistent with the CSA. Moreover, I do not perceive how the return of Crouse's medical marijuana in the limited and seemingly unusual circumstances at issue here would materially hinder the federal government's enforcement of any applicable federal drug laws. Cf. City of Garden Grove, 68 Cal.Rptr.3d at 676 ("It is even more unreasonable to believe returning marijuana to qualified patients who have had it seized by local police will hinder the federal government's enforcement efforts. Practically speaking, this subset of medical marijuana users is too small to make a measurable impact on the war on drugs. Not only are their numbers meager, persons seeking the return of their medical marijuana are not entitled to possess the drug in such quantities as would make them likely candidates for federal prosecution. Upholding the return of [the medical marijuana patient's] 8.1 grams of marijuana would simply not constitute a real or meaningful threat to the federal drug enforcement effort. This is not a case in which preemption is necessary to the federal scheme.").

## II. Conclusion

¶46 For these reasons, I would affirm the judgment of the court of appeals. Accordingly, I respectfully dissent.

I am authorized to state that CHIEF JUSTICE RICE and JUSTICE HOOD join in this dissent.