HARTZ, Circuit Judge,
concurring:
I join the disposition and discussion of the RICO claims on pages 10-35 of the panel opinion. It is my hope, however, that the Supreme Court will one day cast aside the confusing and discredited notion of proximate cause. A much sounder approach to addressing the same issues can be found in the discussions of factual cause and scope of liability in Chapters 5 and 6 of Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2010).
Although I also agree with the panel majority to affirm the denial of injunctive relief, my reasoning is different.
First, I explain why I cannot join the majority’s approach. The majority declares that even if state and local law is preempted by the Controlled Substances Act (CSA), the plaintiffs cannot seek injunctive relief against those laws under the federal courts’ equity powers because neither the CSA nor any other federal law bestows on them a substantive private right. See Maj. Op. at 898-905. To determine whether a statute creates a private right, the majority adopts the same test used by the Supreme Court in determining whether to recognize an implied cause of action under the statute and whether the statute creates a private right necessary for a cause of action under 42 U.S.C. § 1983. See id. at 902-03 (quoting Alexander v. Sandoval, 532 U.S. 275, 289, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (federally created right necessary for implied private right of action) and Gonzaga University v. Doe, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) (federally created right necessary for claim under § 1983)). For this proposition the majority relies largely on the Supreme Court’s recent decision in Armstrong v. Exceptional Child Center, Inc., — U.S. —, 135 S.Ct. 1378, 191 L.Ed.2d 471 (2015). See Maj. Op. at 898-904.
In my view, however, Armstrong provides no support for the majority’s requirement of a private right created by federal law. The Court’s opinion never states that there is such a requirement. And if Armstrong itself or any earlier Supreme Court precedent had imposed that requirement, both the Court’s opinion in Armstrong and Justice Sotomayor’s dissent would have been written very differently. The following discussion of Armstrong is lengthy, but I think it shows that the opinions in that case, rather than adopting a substantive-right requirement, demonstrate its absence.
In Armstrong the Supreme Court considered the mandate in § 30(A) of the Medicaid Act that each State’s Medicaid plan “provide such methods and procedures relating to ... the payment for ... care and services ... as may be necessary ... to assure that payments ... are sufficient to enlist enough providers so that care and services are available under the *915 plan at least to the extent that such care and services are available to the general population in the geographic area....” 42 U.S.C. § 1396a(a)(30)(A). Health-care providers in Idaho contended that the State’s plan violated § 30(A) by setting inadequate reimbursement rates. To put the issue in Armstrong in context, it is helpful to review the possible forms of relief that the providers could have tried to pursue.
The only remedy explicitly set forth in the Medicaid statute permits the Secretary of Health and Human Services to withhold Medicaid funds from the State. See 42 U.S.C. § 1396c. Providers seeking more generous payments could try to persuade the Secretary to exercise that authority, but the Secretary’s decision not to take such a step could be successfully challenged in court under the Administrative Procedure Act (APA) “only when the denial of enforcement [was] ‘arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.’ 5 U.S.C. § 706(2)(A).” Pharm. Research & Mfrs. of Am., v. Walsh, 538 U.S. 644, 675, 123 S.Ct. 1855, 155 L.Ed.2d 889 (Scalia, J., concurring).
Another possible remedy would be to bring a civil-rights claim against state officials. Under the federal civil-rights statute, state officials could be liable to the providers if they deprived the providers “of any rights, privileges, or immunities secured by the [federal] Constitution and laws.” 42 U.S.C. § 1983. Relief could be obtained through “an action at law, suit in equity, or other proper proceeding for redress.” Id. Actions at law under § 1983 typically provide an injured party with damages, so the providers could sue for payments that should have been made if federal law had been followed. But relief under § 1983 is available only if the injured party was deprived of some personal “right,” not just a benefit, conferred by federal law. See Gonzaga, 536 U.S. at 283, 122 S.Ct. 2268. Only “an unambiguously conferred right [can] support a cause of action brought under § 1983.” Id. “For a statute to create such private rights, its text must be phrased in terms of the persons benefited.” Id. at 284,122 S.Ct. 2268.
A similar remedy would be a suit under a private right of action implied from a particular statute. Damages would also be a potential remedy under such a cause of action. But this cause of action, like one under § 1983, is available only if “Congress intended to create a federal right.” Id. at 283, 122 S.Ct. 2268.
None of these three potential remedies (a suit under the APA against the Secretary, a suit under § 1983, or a private right of action implied under the Medicaid Act) was at issue in Armstrong. Rather, the Idaho providers sought only to enjoin state officials to increase those rates prospectively. See 135 S.Ct. at 1382. Of course, the providers might have obtained much greater relief (damages for payments that should have been made in the past had reimbursement rates been set in compliance with § 30(A)) if they had proceeded under § 1983 or an implied statutory cause of action. But they had no choice, because (as will be further discussed below) the Medicaid Act does not contain the necessary rights-creating language and hence had . not conferred on them an individual right. All that remained was a possible equitable preemption action, which would not require rights-creating statutory language. As explained in Justice Sotoma-yor’s dissent:
[EJquitable preemption actions differ from suits brought by plaintiffs invoking 12 U.S.C. § 1983 or an implied right of action to enforce a federal statute. Suits for redress designed to halt or prevent the constitutional violation rather than the award of money damages *916 seek traditional forms of relief. By contrast, a plaintiff invoking § 1983 or an implied statutory cause of action may seek a variety of remedies — including damages — from a potentially broad range of parties. Rather than simply pointing to background equitable principles authorizing the action that Congress presumably has not overridden, such a plaintiff must demonstrate specific congressional intent to create a statutory right to these remedies. For these reasons, the principles that we have developed to determine whether a statute creates an implied right of action, or is enforceable through § 1983, are not transferable to [this] context.
Armstrong, 135 S.Ct. at 1392 (Sotomayor, J., dissenting) (citations and internal quotation marks omitted) (emphasis added).
Although the Supreme Court majority denied the providers’ claim, it did not quarrel -with this summary by Justice So-tomayor. Much of the Supreme Court’s opinion was devoted to rejecting the argument that the Constitution’s Supremacy Clause gave the providers a cause of action to enjoin the imposition of state law on the ground that it was contrary to federal law. See id. at 1383-84; see also Planned Parenthood v. Moser, 747 F.3d 814, 822-38 (10th Cir. 2014) (rejecting the same argument). The Court then turned to the providers’ “contention that, quite apart from any cause of action conferred by the Supremacy Clause, [their] suit can proceed against Idaho in equity.” 135 S.Ct. at 1385. Noting that “[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations,” the Court proceeded to conclude that “[t]wo aspects of § 30(A) establish Congress’s intent to foreclose equitable relief.” Id. (internal quotation marks omitted). First, it said that the statutory provision of a different remedy for a State’s failure to comply with Medicaid requirements (the Secretary can withhold Medicaid funds from the State) suggested that Congress intended to preclude other remedies. See id. Second, it thought that the text of § 30(A) provided a “judicially unadministrable” standard. Id. at 1394. “Explicitly conferring enforcement of this judgment-laden standard upon the Secretary alone,” said the Court, “establishes, we think, that Congress wanted to make the agency remedy that it provided exclusive.” Id. at 1385 (internal quotation marks omitted). The Court concluded, “The sheer complexity associated with enforcing § 30(A), coupled with the express provision of an administrative remedy, ... shows that the Medicaid Act precludes private enforcement of § 30(A) in the courts.” Id.
The panel opinion describes Armstrong somewhat differently. It states that the Supreme Court first “discerned what alleged substantive rights the plaintiffs were seeking to vindicate,” and observed that the health-care providers were seeking “to vindicate their averred federal property rights to ... funds [reimbursing them for habilitation services], rights allegedly bestowed on them by § 30(A).” Maj. Op. at 899. But I can find no language in Armstrong stating that the Court should “first” (or ever, when examining the federal courts’ equity power) concern itself with whether the party seeking injunctive relief alleged any federal substantive right. Nor did the opinion ever say that the providers possessed or even asserted such a right. According to the panel opinion, the Supreme Court was engaged in this “first step” in its analysis when it noted that the plaintiffs were health-care providers “who ‘claim[ed] that Idaho violates § 30(A)’ of Medicaid ‘by reimbursing' [them] at rates lower than § 30(A) permits.’ ” Id. (quoting Armstrong, 135 S.Ct. at 1382) (brackets in the panel opinion). But the language quot *917 ed from Armstrong was in the fourth paragraph of that opinion, merely setting forth the factual background before beginning any analysis. And nothing suggests that the Court thought that the health-care providers were making the frivolous argument that § 30(A), which provided the prospect of greater benefits for the providers, conferred any rights on them.
Indeed, Justice Scalia, whose opinion was the opinion for the majority of the Court on the issues I have already discussed, said just the opposite in a portion of his opinion joined by three other Justices (Justice Breyer, who otherwise joined Justice Scalia’s opinion, did not join this portion of the opinion). He pointed out that the health-care providers did not — and could not — claim that they had a statutorily created right:
The last possible source of a cause of action for [the providers, once the Supremacy Clause and equity had been rejected as possible sources,] is the Medicaid Act itself. They do not claim that, and rightly so. Section 30(A) lacks the sort of rights-creating language needed to imply a private right of action. Sandoval, [532 U.S.] at 286-287 [121 S.Ct. 1511]. It is phrased as a directive to the federal agency charged with approving state Medicaid plans, not as a conferral of the right to sue upon the beneficiaries of the State’s decision to participate in Medicaid. The Act says that the “Secretary shall approve any plan which fulfills the conditions specified in subsection (a),” the subsection that includes § 30(A). 42 U.S.C. § 1396a(b). We have held that such language “reveals no congressional intent to create a private right of action.” Sandoval, supra at 289,121 S.Ct. 1511.
135 S.Ct. at 1387 (plurality opinion of J. Scalia) (emphasis added). The same point is conveyed, albeit a bit obscurely, in the portion of Justice Scalia’s opinion that received support from the majority of the Court:
[The providers] do not claim that Wilder [v. Virginia Hospital Assn., 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) ] establishes precedent for a private cause of action in this case. They do not assert a § 1983 action, since our later opinions plainly repudiate the ready implication of a § 1983 action that Wilder exemplified. See Gonzaga Univ. v. Doe, 536 U.S. 273, 283 [122 S.Ct. 2268, 153 L.Ed.2d 309] (2002) (expressly “rejecting the notion,” implicit in Wilder, “that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983”).
135 S.Ct. at 1386 n.*(brackets omitted). I read this footnote as stating that the providers did not claim a cause of action under § 1983 because they recognized (as they had to) that such a claim must be based on a federally conferred right.
No Justice expressed any doubt about these statements in Justice Scalia’s opinion. In particular, as previously noted, Justice Sotomayor’s dissent on behalf of four Justices (who would have granted injunc-tive relief) did not dispute that the providers lacked a statutorily created private right. Rather, assuming that this was common ground with the majority, it explicitly distinguished “equitable preemption actions from suits brought by plaintiffs invoking 42 U.S.C. § 1983 or an implied right of action to enforce a federal statute,” on the ground that relief under “background equitable principles” is proper even when Congress did not create a statutory right. Id. at 1392 (Sotomayor, J., dissenting).
Moreover, if, as the panel opinion asserts, Armstrong was following long-standing Supreme Court precedent requiring a *918 statutorily created right, I cannot imagine why the Justices wrote their opinions as they did. No Justice contended that the providers possessed a statutorily created right. Why, then, go through all the rigmarole? At the least, some Justice could be expected to explain why no one simply stopped the analysis after noting that the providers did not claim to have a statutorily created right. In particular, if the dissenters believed that the precedents relied on in the panel opinion required a statutorily created private right to bring an equitable preemption action, surely they would have tried to explain why they thought the providers had a statutorily created right or at least reconcile their disregard of that requirement with those precedents.[1]
Perhaps the Supreme Court one day will impose the same requirement that the majority in this case would impose before a party can obtain equitable injunctive relief on the ground that a state law is preempted by federal law. But that is not the law today.
Nevertheless, I agree with the majority that the plaintiffs are not entitled to an injunction against the Colorado statute.
The plaintiffs and intervenors argue that the licensing schemes of Colorado and Pueblo County must be enjoined because their facilitation and promotion of sales of marijuana are preempted by the Controlled Substances Act (CSA). That argument must be examined, however, in light of the Constitution’s anticommandeering principle established in Printz v. United States, 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), and New York v. United States, 505 U.S. 144, 188, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). Under that principle, Congress may not “commandeer the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.” New York, 505 U.S. at 161, 112 S.Ct. 2408 (brackets omitted). The Supreme Court in New York considered a challenge to a federal statute dictating state regulation of the disposal of low-level radioactive waste. See id. at 149-54, 112 S.Ct. 2408. It recognized that “the Framers explicitly chose a Constitution that confers upon Congress the power to regulate individuals, not States.” Id. at 166, 112 S.Ct. 2408. The Court concluded that a portion of the federal statute was unconstitutional because “even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts.” Id. The anticommandeering principle was reaffirmed in Printz, which concerned a federal statute requiring local law enforcement to conduct background checks on prospective handgun purchasers. See 521 U.S. at 902, 117 S.Ct. 2365. The Court held that “Congress cannot circumvent [the prohibition of New York] by conscripting the State’s officers directly.” Id. at 935, 117 S.Ct. 2365. In other words, “[t]he Federal Government may neither issue directives requiring the States to address particular problems, nor command the States’ officers, or those of their political subdivisions, to administer or enforce a federal regulatory program.” Id.
The plaintiffs concede, as they must, that under the anticommandeering principle the federal government cannot compel a State to enforce the CSA, much less to pass laws prohibiting the same conduct prohibited by the CSA. What if a State *919 decides to control a drug, but not as forcefully as the CSA? At what point would the lack of “full enforcement” constitute encouragement or promotion of federal crimes? Say state law imposes only civil penalties, not criminal ones. One could argue that such legislation “encourages” the use of the drug because those in the state can be confident that they will not be subject to any criminal sanctions — the State will not impose them and the limited resources of the federal government make it highly unlikely that it would prosecute. What if the State decides to prohibit only the sorts of distribution of the drug that it considers most damaging to society? It could, for instance, prohibit only distribution of the drug for profit. Or it could prohibit sales by anyone other than heavily regulated entities whose owners and managers are subject to stringent background checks to make sure that they have no ties to smugglers, organized crime, etc. Such a law could be said to promote or encourage use of the drug, but only if the State’s legal regime were to be compared to a regime that criminally prohibits all sales of the drug. Federal law, however, cannot compel the State to criminally prohibit any sales whatsoever, see Neio York, 505 U.S. at 166, 112 S.Ct. 2408, so it would be improper for us to compare the State’s legal regime to such a baseline and conclude that the State’s regime unlawfully promotes or encourages violations of the CSA.
This is not to say, however, that whatever Colorado law is, it could not be preempted by the CSA. The anticomman-deering principle does not preclude the federal government from prohibiting States from enacting legislation. See NCAA v. Governor of N.J., 832 F.3d 389, 398-402 (3d Cir. 2016) (federal statute prohibiting licensing of sports betting). Some specific provisions of Colorado law may be preempted. The Colorado Supreme Court has already held that the CSA preempts a provision requiring “law enforcement officers to return medical marijuana seized from an individual later acquitted of a state drug charge.” People v. Crouse, 388 P.3d 39, 40 (Colo. 2017). Or perhaps state advertising could constitute aiding and abetting violations of the CSA. The plaintiffs may have a good claim for injunctive relief against actions by Colorado that command or exhort violations of the CSA. But they are seeking to throw out the entire statutory scheme — without offering any guidance on how a court should draw the line between violating the CSA and simply failing to enforce it. Their complaint does not allege facts showing that they are entitled .to the injunctive relief they seek.[2]
Finally, the panel opinion addresses the court’s jurisdiction to hear the claims by the States of Nebraska and Oklahoma as intervenors. But because the merits of their claims fall with those of the plaintiffs, I need not address the jurisdictional issue. See Carolina Cas. Ins. Co. v. Pinnacol *920 Assur., 425 F.3d 921, 927-28 (10th Cir. 2005) (court need not address constitutional standing of one plaintiff when the merits of an identical claim have already been resolved against another plaintiff with standing); Ctr. For Reprod. Law & Policy v. Bush, 304 F.3d 183, 193-95 (2d Cir. 2002) (Sotomayor, J.).

. Because the opinions in Armstrong make it clear that current Supreme Court doctrine does not require the plaintiff to have a federally created substantive right in order to bring an equitable preemption action, I think it unnecessary to review the errors in the panel opinion's analysis of earlier Supreme Court opinions.

. I note that the amicus brief of Law Professors in Support of the Respondent State of Colorado and Affirmance suggests that the U.S. Department of Justice (DOJ) has the exclusive authority to initiate preemption challenges under the CSA. I express no view on the propriety of an injunction sought by the DOJ. That prospect seems remote, however, since the DOJ could almost certainly accomplish as much by notifying the State that it planned to commence criminal prosecutions of licensed dealers in Colorado unless the State modified its licensing regime or other practices. Cf. James M. Cole, Memorandum for all U.S. Att'ys, Guidance Regarding Marijuana Enforcement (August 29, 2013) (conditioning the DOJ’s nonenforcement policy on the "expectation that states and local governments ... will implement strong and effective regulatory and enforcement systems”).